# EXHIBIT "A"

**Indicative Non-Binding Term Sheet for Settlement Agreement**

This term sheet (this "***Term Sheet***"), entered into effective March 30, 2021 sets forth a summary of the principal terms of a settlement agreement (the "***Settlement Agreement***") to be entered into by and among (i) the Subchapter V Chapter 11 Trustee, Tarek Kirk Kiem (the "***Trustee***"), on behalf of Micron Devices LLC, a Delaware limited liability company (the "***Debtor***"); (ii) Stimwave Technologies Incorporated, a Delaware corporation ("***Stimwave Parent***") and Stimwave LLC, a Nevada limited liability company ("***Stimwave LLC***" and, together with Stimwave Parent, the "***Stimwave Parties***") and (iii) Kennedy Lewis Investment Management LLC and certain of its affiliates (collectively, the "***KLIM Parties***") that will resolve all claims between the Debtor, on the one hand, and the Stimwave Parties and/or the KLIM Parties, on the other.

This Term Sheet does not include all of the terms, conditions, covenants, representations, warranties and other provisions that the Trustee and the Stimwave Parties and the KLIM Parties may require in the Settlement Agreement or any ancillary agreements thereto, and the parties therefore agree that promptly upon execution by all parties and for ten (10) days thereafter they shall diligently and in good faith negotiate the terms of and prepare an executable form of Settlement Agreement. Trustee further agrees that promptly upon execution of this Term Sheet by all parties the Trustee shall begin the process, including giving such notice as will most expeditiously lead to a hearing on approval of such Settlement Agreement as is signed by the parties.

| Term | Discussion |
|---|---|
| 1. Estoppel and Covenant Not to Sue as to Prior Transactions and Assignment of Claims | The Trustee, on behalf of itself and the Debtor, will agree to be forever estopped from challenging, and will covenant not to sue regarding, or contest in any manner, the accuracy, validity, and binding nature and enforceability of any of the various prior transactions, and, or assignment and transfer documents and other agreements involving the Debtor, the Stimwave Parties and the KLIM Parties, including but not limited to: (i) the Contribution Agreement, dated as of March 25, 2018 (the "***Contribution Agreement***") , (ii) the Assignment and Assumption Agreement, dated as of October 13, 2018, by and between the Debtor and Stimwave Parent; (iii) the Patent Assignment, dated November 6, 2018 (the "***Patent Assignment***"); and (iv) the Assignment and Assumption Agreement, dated as of January 23, 2019 (together with the Patent Assignment and the October 13, 2018 Assignment and Assumption Agreement, the "***IP Assignment Agreements***"), (iv) that certain Loan and Security Agreement, dated as of May 13, 2019 (as amended), among Kennedy Lewis Investment Management LLC, as collateral agent, the lenders party thereto from time to time, Stimwave Parent, Stimwave LLC and each guarantor otherwise party thereto from time to time (the "***KL LSA***"), (v) all agreements related to the KL LSA, including the security agreements and the perfection certificate delivered pursuant thereto; and such other agreements, documents, and licenses executed by or on behalf of Debtor in favor of the Stimwave Parties and/or KLIM Parties.<br><br>The Trustee, on behalf of itself and the Debtor, will further agree to transfer and assign to the Stimwave and KLIM Parties all rights of Debtor to challenge or contest the accuracy, validity, and binding |

| Term | Discussion |
|---|---|
| | nature and enforceability of such various prior transactions and assignment and transfer documents and such other agreements, documents, and licenses, and all claims and causes of action arising out of or related thereto. |
| 2. Resolution and Withdrawal of Litigation Claims | A) *Adversary Proceedings:* Solely with respect to the adversary proceeding captioned *Micron Devices, LLC v. Stimwave Technologies, Inc.*, Case No. 21-01034-LMI, the Settlement Agreement will be contingent on, and will take effect only upon, the entry of an Order reflecting a factual finding by the Bankruptcy Court confirming the accuracy, validity, binding nature, and enforceability of the Contribution Agreement and the IP Assignment Agreements. The factual finding shall be made following a hearing or other similar proceeding, and the scope and nature of the finding and related Order shall be agreed between the Parties and shall be consistent with the above Estoppel and Covenant Not to Sue as to Prior Transactions and Assignment of Claims. The burden shall be on the Stimwave Parties and the KLIM Parties to take such action as necessary to seek and obtain such factual finding. The Trustee shall waive his right in the context of such proceeding to contest the factual finding sought by the Stimwave Parties and the KLIM Parties.<br><br>B) *Litigation*: All existing litigation claims by the Debtor against the Stimwave Parties and the KLIM Parties, with the exception of the adversary proceeding referenced above, will be terminated, at the election of the Stimwave Parties and the KLIM Parties, by a Stipulated Judgment or withdrawal and dismissal with prejudice via stipulation or otherwise, and all underlying claims and causes of action alleged by or in favor of Debtor shall be released as provided below. |
| 3. Transfer of Right, Title and Interest in Property | A) The Trustee, on behalf of the Debtor, will assign, transfer and convey to the Stimwave Parties (subject to a security interest in favor of the KLIM Parties) all of the Debtor's right, title, and interest, without recourse, in and to all of Debtor's assets and properties of every type and description, including but not limited to tangible, intangible, intellectual, personal, and real, and claims, and causes of action (whether known or unknown and whether or not currently asserted, and whether based on tort, contract, statute, common, law of other authority or theory), excluding only the following, as well as any asset identified pursuant to section 3(C), below: |

2

| Term | Discussion |
|---|---|
| | i. all executory contracts and unexpired leases of any kind (with Trustee to provide the Stimwave Parties and the KLIM Parties copies of all such agreements and leases of which Trustee is aware within three days of execution of this Term Sheet), except that, subject to a security interest in favor of the KLIM Parties, and at the election of the Stimwave Parties and the KLIM Parties, Trustee shall assign or transfer to Stimwave its interest in (i) any contract with iSine, Inc. and OSCAR, as provided below, (ii) any contract included in the IP Assignment Agreements, (iii) the Debtor's rights pursuant to any contractual agreements with customers or any other counterparty to recall, claw back, or otherwise take possession of any medical device sold to any customer or other person, or provided on "consignment" or otherwise in the possession of any counterparty to an "Agent Agreement," subject to the Debtor issuing such notice as described in section 4(B), below; and (iv) Debtor's rights under any employment or consulting agreement.<br><br>ii. Legal claims of the Debtor that (1) the Debtor has against any licensed professional for professional negligence arising out of services performed for Debtor or (2) are not legally assignable under applicable law.<br><br>B) The assets and properties that Debtor will transfer to the Stimwave Parties include, without limitation, all of Debtor's right, title, and interest in and to the following:<br><br>i. All intellectual property, including but not limited to, all patents, all patent applications, all technical information, all know how, all copyrights, all work in progress regarding such matters, and all domain names, trademarks, trade names and similar property or rights , and specifically including without limitation:<br><br>a) *Previously Assigned Intellectual Property:* The intellectual and other property that was described or identified as assigned or transferred to any of the Stimwave Parties, pursuant to the IP Assignment Agreements, and/or in the May 13, 2019 Perfection Certificate executed by Stimwave in connection with the KL LSA; |

3

| Term | Discussion |
|------|------------|
|  | b) *Other Intellectual Property:* The Debtor's right, title and interest in all patents, patent applications, technical information, and related domain names, that were developed by the Debtor, or any of its current or former affiliates or related parties, or any employee thereof or of Stimwave Parent, on or before November 25, 2019, and from and after that date to the date through the closing date of the settlement as provided in the Settlement Agreement, as well as all documents and writing evidencing the existence and, or creation, thereof; |
|  | ii. *Interest in StimQ Equity*: All legal and beneficial interests in StimQ Medical LLC, an international company organized under the laws of the Commonwealth of The Bahamas, including all shares transferred by the Debtor to Stimwave Parent as described in or specified by the terms of the Contribution Agreement and all applicable assignment documents; |
|  | iii. *Moventis*: at the election of the Stimwave Parties and the KLIM Parties, (i) ownership of right, title and interest in, as well as the physical transfer and delivery of all, or such portion thereof as the Stimwave Parties and KLIM Parties shall choose, medical devices of any kind or description, including all Pain Product (as defined below) and any components thereof in the Debtor's possession, custody or control, whether in the Debtor's possession or in the possession of contract counterparties (including but not limited to distributors or customers who have not paid for such products) and (ii) the Debtor's rights pursuant to any contractual agreements with customers or any other counterparty, to recall, claw back, or otherwise take possession of any Pain Product sold or provided to any customer or any other person; |
|  | iv. *Contract Rights (iSine, OSCAR, et al.):* at the election of the Stimwave Parties and the KLIM Parties, any agreement ever in effect between Debtor and iSine, Inc. or OSCAR, including all work product from those agreements and the right to order any products of any nature from iSine, Inc. or OSCAR related to those agreements; |

4

| Term | Discussion |
|---|---|
| | v.  All source code and software of every type; |
| | vi.  All furniture, office equipment, and technical equipment, including but not limited to all property of every type taken from Stimwave's headquarters on December 14, 2019; |
| | vii.  All accounts receivable of the Debtor; and |
| | viii.  Except as specifically excluded as provided in 3 (A)(ii) above, all claims and causes of action and the like against any party, whether known or unknown and whether or not currently asserted and whether based on tort, contract, statute, common, law of other authority or theory (the "***Litigation Claims***"). |
| | C) Upon execution of this Term Sheet, the Trustee will reasonably cooperate with requests by the Stimwave Parties and the KLIM Parties for documents and other information concerning the assets to be transferred subject to the Settlement Agreement.  At any point prior to entry of the Settlement Order (defined below), the Stimwave Parties and the KLIM Parties will identify for the Trustee any assets that they elect to exclude from the transfer. |
| | D) The Trustee will take such action and execute such documents as necessary to assign and transfer to Stimwave Parent all of Debtor's right, title, and interest as provided above.  The Stimwave Parties and the KLIM Parties shall be entitled to designate a special purpose entity to take possession of some or all of the assets, properties, and claims and causes of action to be transferred to them by the Debtor as provided herein. |
| | E) *Limitation of Liability*:  The Stimwave Parties and the KLIM Parties shall not be responsible for any liabilities arising under or in relation to any contracts, assets or other properties transferred pursuant to the Settlement Agreement, if such liabilities arose or accrued before the Settlement Effective Date and, including without limitation any liabilities arising from failure to perform, warranty or other breach, default or violation occurring before the Settlement Effective Date, except to the extent that (i) such liabilities arise in connection with actions taken by the Trustee pursuant to this Term Sheet and (ii) the Stimwave Parties and the KLIM Parties elect to assume such liabilities subject to the Trustee's obligation pursuant to this Term Sheet to |

5

| Term | Discussion |
|---|---|
| | provide the Stimwave Parties and the KLIM Parties with documents and information concerning the assets and contracts to be transferred or assigned. |
| 4. Cessation of Certain Business Operations and Notice to Contractual Parties | A) *Cessation of PNS Business:* For the avoidance of doubt, the purpose and effect of the Settlement Agreement shall be that, after the Settlement Effective Date (as defined below), the Trustee, on behalf of itself and the Debtor, shall have no authority, power, or ability to continue or commence, and shall immediately cease, any development, manufacture, marketing, sales, commercial distribution and, or clinical trials of any pain relief product, system, or method, including, without limitation, any PNS wireless neurostimulator that has been offered, marketed, or sold under the name "Moventis" or any other name by Debtor, Micron Medical Corporation ("**Micron Medical**"), or any other person or entity (the "**Pain Product**"), and will not continue or commence any development, manufacture, marketing, sales, commercial distribution or clinical trials of any Pain Product or provide services to or otherwise assist or support any affiliate of Debtor, including without limitation Micron Medical, and, or Laura Perryman, Patrick Larson, or any other employee or former employee of Debtor, or any other entity or person, in the development, manufacture, marketing, sales, commercial distribution or clinical trials of any pain relief product and, or system, or method, including without limitation the Pain Product or any other PNS wireless neurostimulator.<br><br>B) *Termination of Agent Agreements.* Prior to or within 10 days of the Settlement Effective Date, the Trustee shall give written notice to all counterparties of which he has knowledge to any "Agent Agreement" that the Company intends to terminate such agreements. The Trustee assigns to the Stimwave Parties and the KLIM Parties all of the Debtor's rights to recall, claw back, or otherwise take possession of any medical device sold to any customer or other person, or provided on "consignment" or otherwise in the possession of such counterparty. To the extent that the Stimwave Parties or the KLIM Parties exercise these rights, they shall be responsible to pay any resulting damages pursuant to the terms of the relevant Agent Agreement, if such damages would be considered an administrative claim against the Debtor's bankruptcy estate. |
| 5. Payment Obligations | On the Settlement Effective Date, Stimwave Parent will pay to the Trustee a sum of $1,000,000. |

| Term | Discussion |
|---|---|
| 6. Sharing of Proceeds from Prosecution of the Litigation Claims | To the extent that the KLIM Parties and/or the Stimwave Parties prosecute the Litigation Claims, with the exception of Litigation Claims or causes of action arising from or concerning the ownership or use of intellectual property, as further defined in the settlement agreement, and (i) are awarded, and collect, damages with respect to the Litigation Claims or (ii) receive funds pursuant to any settlement agreement between the KLIM Parties and/or the Stimwave Parties and any defendant with respect to the Litigation Claims, the Stimwave Parties and/or the KLIM Parties shall distribute to the Trustee, on behalf of and for the benefit of, the Debtor's bankruptcy estate, 25% of such proceeds, net of any costs, fees, or expenses incurred by the Stimwave Parties and/or the KLIM Parties in connection with prosecuting such claims.<br><br>For the avoidance of doubt, the Stimwave Parties and the KLIM Parties shall have no obligation to pursue any or all of the Litigation Claims and shall do so at their sole discretion, and the Trustee shall have no input into or ability to control the Stimwave Parties and/or the KLIM Parties actions with respect to the prosecution of the Litigation Claims, collection of damages with respect to the Litigation Claims, or entry into settlement of the Litigation Claims. |
| 7. Subordination of Claims | The Stimwave Parties and the KLIM Parties will agree to subordinate their claims against the Debtor's estate, including any allowed administrative expense claims, to all other allowed claims in the bankruptcy. |
| 8. Allowance of Liquidated Subordinated Claims and Reconciliation/Estimation of Unliquidated Claims | A) The Trustee shall consent to the liquidation and allowance of the following claims as subordinated general unsecured claims against the Debtor's estate:<br>    i. any legal fees awarded by the Bankruptcy Court to the Stimwave Parties or the KLIM Parties pursuant to ECF Nos. 135, 136, 157, 163, or 174;<br>    ii. Stimwave's Claim No. 18-1 in the amount of $67,929.07.<br><br>B) Within 120 days of the Settlement Effective Date, the Trustee, the KLIM Parties, and the Stimwave Parties shall resolve by agreement, estimation, or Bankruptcy Court adjudication the allowance of the following claims as subordinated general unsecured claims against the Debtor's estate:<br>    i. Stimwave's Claim Nos. 19-1 and 20-1; and<br>    ii. KLIM's Claim No. 22-1<br>    iii. Within 10 days of execution of this Term Sheet, Stimwave shall amend Claim Nos. 19-1 and 20-1 and KLIM shall amend Claim No. 22-1 to include a liquidated amount, which shall be |

| Term | Discussion |
|---|---|
|  | subject to resolution by agreement or estimation, or Bankruptcy Court adjudication as referenced above. |
| 9. Further Assurances; Performance by Stimwave Parties | The Trustee, on behalf of itself and the Debtor, will agree to execute and deliver any further agreements, instruments or documents, and stipulate to the entry of such order and judgments required to effect the terms of the Settlement Agreement and otherwise provide cooperation with respect to certain matters, including (i) executing any additional instruments of assignment, transfer or conveyance to effect the StimQ Equity Transfer and the IP Assignment Agreements and (ii) providing access to internal and external records to the extent he is in possession or control of them, including directing patent counsel to the Debtor and  directors, officers, employees, advisors and other agents and representatives employees to make records available to the Stimwave Parties and the KLIM Parties.<br><br>In addition, the Trustee will direct the Debtor's employees to assist in and cooperate with the conveyances described in this term sheet, including cooperating regarding the location and details related to source code and other intangible property.<br><br>The Trustee will execute a limited power of attorney in favor of the Stimwave Parties and KLIM Parties to allow the Stimwave Parties and KLIM Parties to sign such conveyances in the event the Trustee is unavailable or otherwise unable to sign them.<br><br>In the event the Stimwave Parties are unable or unwilling to make the Settlement Payment, then the Stimwave Parties and the Trustee acknowledge and agree that any or all of the KLIM Parties may make such payment, and in that event, all transfer or properties and rights contemplated to be made to the Stimwave Parties shall be made to the KLIM Parties, but otherwise the Stimwave Parties shall be bound by and receive the benefits contemplated by this Term Sheet and as provided in any Settlement Agreement executed by all the parties to this Term Sheet. |
| 10. Releases | The Trustee, on behalf of itself and the Debtor, will agree to a full release of the Stimwave Parties, the KLIM Parties, their respective affiliates and their and their respective affiliates' directors, officers, employees and other personnel, advisors and other agents and representatives.<br><br>The Stimwave Parties and the KLIM Parties will agree to a full release of the Trustee.  For the avoidance of doubt, the Stimwave Parties and the KLIM Parties, do not release their subordinated claims as identified above, and will not release the Debtor's past or present affiliates, directors, officers, employees and other personnel, |

| Term | Discussion |
|---|---|
|  | advisors and other agents and representatives from any direct claims or causes of action, and any release will specially exclude certain parties, including, without limitation, the following: Micron Medical, Stimguard, Neural Diabetes, Laura Tyler Perryman, Gary Perryman, Ron Perryman, Brandyn Perryman, Michael Perryman, any entity (other than the Debtor) currently or formerly directly or indirectly owned or controlled by any of the above-referenced Perrymans, or any employees or former employees of Debtor or Micron Medical including, but not limited to, Patrick Larson, Graham Greene, Benjamin Speck, Richard LeBaron, Elizabeth Greene, Ron Perryman, Brandyn Perryman, Sherri Costa, Gil Bao, Evelyn Valerio and Marlene Pena. |
| 11. Conditions to Settlement Effective Date | The "*Settlement Effective Date*" shall mean the date upon which each of the following conditions has been satisfied or waived in accordance with the terms of the Settlement Agreement: (i) execution and delivery of ancillary agreements in form and substance reasonably acceptable to the Parties, (ii), entry of a court order approving the Settlement Agreement in form and substance reasonably acceptable to the Parties (the "*Settlement Order*"), which Settlement Order has not been stayed, and (iii) the entry of a court order reflecting the factual finding discussed above, and approval of the Settlement Approval Motion by the Bankruptcy Court, which, for the avoidance of doubt, may be the Settlement Order. |
| 12. Termination | The Stimwave Parties and the KLIM Parties shall have the right to terminate this Term Sheet or the Settlement Agreement if (i) the chapter 11 case converts to chapter 7 prior to the occurrence of the Settlement Effective Date or (ii) the Bankruptcy Court has not entered the Settlement Order in form and substance reasonably acceptable to the Stimwave Parties and the KLIM Parties on or before sixty (60) days following full execution of this Term Sheet. Any Party may terminate this Term Sheet or the Settlement Agreement if the Settlement Effective Date has not occurred on or prior to 120 days following full execution of this Term Sheet. |
| 13. Representations and Warranties | The Settlement Agreement will contain a representation and warranty that the Trustee has authority to execute the settlement agreement. All assets conveyed or transferred by the Trustee in this Settlement Agreement are done As Is, Where Is, without any representations or warranties by the Trustee and without recourse except as specifically stated on the Settlement Agreement. |

**Stimwave Technologies Incorporated**

By: _____

Its: Aure Bruneau, Chief Executive Officer

Dated: March 30, 2021

**Stimwave LLC**

By: _____

Its: Aure Bruneau, Manager

Dated: March 30, 2021

**Kennedy Lewis Investment Management, LLC**

By: _____

Its: _____

Dated: _____

_____
Tarek Kiem
Subchapter V Chapter 11 Trustee for the
Bankruptcy Estate of Micron Devices, LLC

Dated: _____

10

**Stimwave Technologies Incorporated**

By: _____

Its: _____

Dated: _____

**Stimwave LLC**

By: _____

Its: _____

Dated: _____

**Kennedy Lewis Investment Management, LLC**

By: _____[signature]_____

Its: __Authorized Signatory_____

Dated: 3/30/2021

_____[signature]_____

Tarek Kiem
Subchapter V Chapter 11 Trustee for the
Bankruptcy Estate of Micron Devices, LLC

Dated: 3/30/2021

10