UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

MICRON DEVICES, LLC,

Case No. 20-23359-LMI

Chapter 11

Debtor.
_____/

**NOTICE OF FILING DECLARATION OF DAVID KHO IN SUPPORT OF TRUSTEE'S MOTION FOR APPROVAL OF THE SETTLEMENT AGREEMENT ENTERED INTO BY THE SUBCHAPTER V CHAPTER 11 TRUSTEE, KENNEDY LEWIS INVESTMENT MANAGEMENT, LLC, AND STIMWAVE TECHNOLOGIES INC. [ECF 234] SET FOR HEARING ON APRIL 30, 2021 AT 9:30 A.M.**

PLEASE TAKE NOTICE that undersigned counsel for Kennedy Lewis Investment Management LLC ("Kennedy Lewis"), files herewith a Declaration of David Kho In Support Of Trustee's Motion For Approval Of The Settlement Agreement Entered Into By The Subchapter V Chapter 11 Trustee, Kennedy Lewis Investment Management, LLC, and Stimwave Technologies Inc. [ECF 234] Set For Hearing on April 30, 2021 at 9:30 a.m.

**CERTIFICATE OF SERVICE**

I CERTIFY that this document is being filed electronically *via* the Court's CM/ECF website. I further certify that the document is being furnished by transmission of Notices of Electronic Filing ("NEF") generated by CM/ECF to those parties registered to receive NEF in this case, on the date the document is entered on the court docket.

Dated: April 28, 2021

Respectfully submitted,

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**

1

Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:     (305) 789-3200

By:   */s/ Patricia A. Redmond*
    Patricia a. Redmond
    Florida Bar No 303739
    predmond@stearnsweaver.com

– and –

AKIN GUMP STRAUSS HAUER & FELD LLP
Stephen M. Baldini (*Pro hac vice*)
Brad M. Kahn (*Pro hac vice*)
Rachel J. Presa (*Pro hac vice*)
One Bryant Park
New York, NY 10036
(212) 872-1000

*Counsel for Kennedy Lewis Investment Management, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

IN RE:

MICRON DEVICES, LLC,

    Debtor.

_____/

Case No. 20-23359-LMI

Chapter 11

## **DECLARATION OF DAVID KHO**

1. My name is David Kho.

2. I am over the age of 18 and am competent to testify.

3. I am a Managing Director of Kennedy Lewis Investment Management, LLC ("KLIM").

4. My principal focus and area of responsibility at KLIM is "life sciences," which includes companies such as Stimwave Technologies, Inc. ("Stimwave"), and products such as Stimwave's peripheral nerve stimulation, or "PNS," pain relief device. As part of my responsibilities, I perform "due diligence" on KLIM's prospective life sciences investments, including both loans and equity investments. Fellow KLIM Managing Director Rich Gumer and I were the two KLIM life science personnel who oversaw the loan that KLIM eventually made to Stimwave. This involved performing due diligence on Stimwave and its assets, negotiating the loan, and overseeing the documentation of the loan, including the various loan documents referred to below.

5. I personally met with, spoke on the phone with, and communicated by email with, Stimwave's then-CEO Laura Perryman in connection with the due diligence for the KLIM loan (and equity investment), the negotiations for the loan, and the documentation of that loan. Ms. Perryman was my principal contact at Stimwave regarding all of those matters. I have remained

involved in monitoring Stimwave and the KLIM loan, and the litigation between, principally, Stimwave and Ms. Perryman.

6. I have personnel possession of the due diligence and loan documents referred to herein. As discussed below, some of the documents were provided or made available to me by Ms. Perryman, including what are referred to as the "Transfer Agreements." The Loan Documents were prepared and provided to me by KLIM's counsel in connection with documenting the loan to Stimwave and KLIM's security interest in the assets of Stimwave, including the intellectual property and StimQ shares discussed below.

7. If I were called to testify as a witness in this matter, I could and would testify to each of the facts set forth herein based upon my personal knowledge or my review of documents.

8. KLIM is a Delaware limited liability company and investment manager that makes debt and equity investments in a variety of markets.

9. Since May 13, 2019, KLIM has been a lender to, and preferred shareholder of, Stimwave, a creditor and affiliate of the Debtor Micron Devices, LLC ("Debtor").

10. KLIM has also been named as a third-party defendant as to certain third-party claims filed by the Debtor, its founder and principal Laura Perryman, and her husband Gary Perryman in the Delaware Court of Chancery. *See Stimwave Tech., Inc. v. Micron Devices, LLC*, No. 2019-1003-SG (Del. Ch. 2019) (the "Delaware Action").

11. On May 13, 2019, KLIM loaned Stimwave $10 million, and agreed to loan it up to $10 million more, pursuant to a Loan and Security Agreement (the "LSA") and related documents (together with the LSA, the "Loan Documents"). A true and correct copy of the LSA is attached as **Exhibit 20** to the Movant's Exhibit Register.[1]

---

[1] All references to the Movant's Exhibit Register refer to that exhibit register and the exhibits attached thereto, that have been filed with the Court in the above-captioned case with respect to the evidentiary hearing set for April 30,

2

12. Laura Perryman, then-CEO of Stimwave, was KLIM's primary contact regarding the loan, including the security for the loan, and for KLIM's diligence into Stimwave, including its assets and financial condition, prior to finalizing its loan and equity investment. Among other things, Ms. Perryman provided KLIM with information regarding the history and organizational structure of Stimwave and its affiliates, including the Debtor, as well as the identification of and nature of Stimwave's assets, liabilities, and business and financial performance. KLIM relied on the information provided by Ms. Perryman in making the loan. Ms. Perryman also negotiated the terms of the LSA with KLIM, and, in her then-capacity as CEO, signed all the Loan Documents on behalf of Stimwave.

13. Materials provided by Laura Perryman and reviewed by KLIM during its loan diligence confirmed, among other things, that the Debtor executed a series of agreements in 2018 and early 2019 (collectively, the "Transfer Agreements") that transferred to Stimwave all of the Debtor's equity interest in an entity called StimQ Medical LLC (the "StimQ Equity") and all of the Debtor's right, title and interest in a portfolio of intellectual property, including, but not limited to licenses, patents, related know-how, and certain other contractual rights (the "Assigned IP"). The Transfer Agreements included:

    a. The StimQ Contribution Agreement. The Debtor contributed the StimQ Equity to Stimwave pursuant to the StimQ Contribution Agreement, dated as of March 25, 2018. As set forth in the StimQ Contribution Agreement, the Debtor effected the contribution of StimQ Equity "in the interest of improving opportunities for operating and financing opportunities of [Stimwave] and StimQ," which the Debtor determined to be "in the best interests of [its] equity holders," and in a manner that qualified "under the

---

2021 on *Trustee's Motion for Approval of the Settlement Agreement Entered into by the Subchapter V Chapter 11 Trustee, Kennedy Lewis Investment Management, LLC and Stimwave Technologies Inc.* (ECF No. 234).

appropriate provision of the Internal Revenue Code . . . as a tax free capital contribution." As set forth therein, Laura Perryman executed the StimQ Contribution Agreement on behalf of both the Debtor (in her capacity as its Manager) and Stimwave (in her capacity as its President and Chief Executive Officer). A true and correct copy of the StimQ Contribution Agreement is attached as **Exhibit 3** to the Movant's Exhibit Register.

      b.      <u>License Assignment Agreement</u>. The Debtor assigned certain licenses to Stimwave pursuant to the Assignment and Assumption Agreement dated as of October 13, 2018 (the "<u>License Assignment Agreement</u>"). Under the License Assignment Agreement, Debtor "irrevocably" sold, assigned, granted and conveyed and transferred to Stimwave all of Debtor's "right, title, and interest in and to" certain "Assigned Contracts." In turn, Stimwave assumed the Debtor's duties, liabilities and obligations, and agreed "to pay, perform, and discharge, as and when due," all of the Debtor's obligations under such Contracts accruing on and after the date of the License Assignment Agreement. As set forth therein, the License Assignment Agreement was executed on behalf of the Debtor by Mark Coleman, a director, and on behalf of Stimwave by Laura Perryman (as Chief Executive Officer). A true and correct copy of the License Assignment Agreement is attached as **Exhibit 4** to the Movant's Exhibit Register.

      c.      <u>Patent Assignment Agreement</u>. The Debtor assigned certain patents and inventions to Stimwave pursuant to the Patent Assignment, dated as of November 6, 2018 (the "<u>Patent Assignment</u>"). The Debtor acknowledged in the Patent Assignment Agreement that it was selling, assigning, and transferring "its entire right, title and interest throughout the world" in the patents and inventions and had received "good and

valuable consideration." As set forth therein, the Patent Assignment Agreement was executed by Laura Perryman on behalf of both the Debtor (as Manager) and Stimwave (as Chief Executive Officer). A true and correct copy of the Patent Assignment Agreement is attached as **Exhibit 5** to the Movant's Exhibit Register.

        d.      Epimed Assignment Agreement. The Debtor assigned to Stimwave all of its rights under a contract with Epimed International, Inc. (the "Epimed Contract") pursuant to the Epimed Assignment Agreement dated as of January 23, 2019. Pursuant to the Epimed Assignment Agreement, Stimwave assumed all of the Debtor's "duties, liabilities, and obligations" under the Epimed Contract and agreed "to pay, perform, and discharge, as and when due," all of the Debtor's obligations under the Epimed Contract accruing on and after the date of the Epimed Assignment. As set forth therein, the Epimed Assignment Agreement was executed on behalf of the Debtor by Mark Coleman in his capacity a director and on behalf of Stimwave by Laura Perryman in her capacity as Chief Executive Officer. A true and correct copy of the Epimed Assignment Agreement is attached as **Exhibit 6** to the Movant's Exhibit Register

14. In addition to providing the underlying Transfer Agreements, Ms. Perryman expressly represented to KLIM, in writing, that the Debtor had transferred the Assigned IP and StimQ Equity to Stimwave, and that the Debtor no longer had a corporate existence.

15. For instance, on April 4, 2019, Ms. Perryman responded to diligence questions from KLIM's counsel at the law firm Leason Ellis about Stimwave's ownership of patents as part of an email chain with KLIM's counsel and Rich Gumer of KLIM.[2] Ms. Perryman wrote,

---

[2] I received and reviewed this email chain during KLIM's diligence, when I discussed the information therein with my colleagues. I also reviewed this email, which is a business record of KLIM maintained on KLIM's secure email server, in the course of the instant proceedings and the Delaware Action.

"Micron was dissolved and all assignments of patents was moved to Stimwave Technologies Incorporated."  Ms. Perryman attached a patent map reflecting Stimwave's ownership of the patents that were transferred pursuant to the Patent Assignment, as well as the December 28, 2018 cancellation certificate for the Debtor that Ms. Perryman signed and filed with the Delaware Secretary of State.  A true and correct copy of the email chain dated April 4, 2019, along with the attachments to Ms. Perryman's email, is attached as **Exhibit 29** to the Movant's Exhibit Register.

16.    In another email chain between Ms. Perryman, Rich Gumer, and me, on April 25, 2019, Ms. Perryman noted that "stimQ shareholders [] contributed their shares to Stimwave."  In response, on April 26, 2019, I asked whether StimQ held any patents or approvals related to Stimwave's work in the field of peripheral nerve stimulation.  She responded, again, that "all patents [we]re assigned to Stimwave."  I also asked her to identify the holders of outstanding StimQ stock, to which she responded, "The preferred share holder stryker and the early investors that paid cash for common and Stimwave are the only holders about 19 percent other than stimwave."  On information and belief, this response was intended to refer to the fact that the Debtor and others had transferred their StimQ equity to Stimwave, which, as a result, owned 81% of the total StimQ equity.  A true and correct copy of the email chain dated April 25 through 26, 2019, is attached as **Exhibit 30** to the Movant's Exhibit Register.

17.    Through separate diligence, KLIM also obtained Stimwave's filings with the United States Patent and Trademark Office (the "USPTO") evidencing the Patent Assignment. Those filings were consistent with Ms. Perryman's representations regarding the Assigned IP.

18.     Pursuant to the LSA, and as collateral for the obligations thereunder, Stimwave granted KLIM a continuing first-priority security interest in all of Stimwave's right, title, and interest in and to all of Stimwave's personal property.

19.     The Loan Documents explicitly provide that KLIM's collateral includes the Assigned IP.  First, the "Collateral" in which KLIM has a security interest is defined in the LSA to include "Intellectual Property," which in turn is defined to include, among other things, Stimwave's copyrights, patents and trademarks.  *See* LSA at 3; *id*. Ex. A; *see also id*. §§ 4.1, 5.2. Additionally, the Loan Documents include an Intellectual Property Security Agreement (the "IP Security Agreement"), through which Stimwave granted KLIM a security interest in certain of Stimwave's intellectual property.  The exhibits to the IP Security Agreement list 106 patents owned by Stimwave, which I understand are the same patents that the Debtor transferred to Stimwave pursuant to the Transfer Agreements.  Laura Perryman signed the IP Security Agreement, and it was filed with the USPTO.  A true and correct copy of the IP Security Agreement is attached as **Exhibit 22** to the Movant's Exhibit Register.

20.     The Loan Documents also include a Perfection Certificate, signed by Laura Perryman that lists Stimwave's assets, including the same set of patents, as well as an 81% interest in the equity of StimQ.  A true and correct copy of the Perfection Certificate is attached as **Exhibit 21** to the Movant's Exhibit Register.

21.     The LSA and the Perfection Certificate also contained myriad assurances confirming the truth of the statements therein and certifying that Stimwave had good title to, rights in, and the power to transfer each item of the collateral and that it had taken all necessary actions to give KLIM a perfected security interest.  *See*, *e.g.*, LSA at §§ 5.2(a), 5.2(e); Perfection Certificate at 11.  Again, all of these were attested to by Laura Perryman.

22. KLIM is owed unpaid secured obligations, including principal and interest, of $20,879,279.32 as of April 30, 2021, related to funds that KLIM advanced to Stimwave pursuant to the LSA.

23. I and my colleagues at KLIM negotiated the LSA at arm's length and in good faith. KLIM entered into the LSA in reliance on Laura Perryman's representations regarding the Assigned IP and StimQ Equity, among other things, and the documentation she provided. At the time Ms. Perryman made those representations and provided those documents, KLIM understood Ms. Perryman to be making those representations in her capacity as CEO of Stimwave and her personal capacity, and with personal knowledge of information regarding the Debtor and its actions in connection with the Transfer Agreements, given her position as the Managing Member of and a signatory for Debtor. When Ms. Perryman advised KLIM that the Debtor had been dissolved and was no longer in existence and made other representations related to the Debtor, KLIM also understood that Ms. Perryman was making those representations as the former Managing Member of the Debtor.

24. Prior to the date KLIM and Stimwave entered into the LSA, Ms. Perryman made no statements that indicated, or even suggested, that the Debtor, and not Stimwave, owned the Assigned IP and/or the StimQ Equity; that there were any issues or questions regarding the validity or enforceability of the Transfer Agreements; or that the Debtor had any claim to any right, title, or interest in the Assigned IP or the StimQ Equity. The first time KLIM heard any such claims or positions by the Debtor or Ms. Perryman was after Ms. Perryman resigned as CEO of Stimwave in November of 2019.

25. Nor did I, or KLIM, have any knowledge, from Ms. Perryman or any other source, that any legal or factual basis existed, or was claimed to exist, to avoid the Debtor's

8

transfers of the StimQ Equity or Assigned IP to Stimwave at the time the LSA was executed and the perfection of all liens granted pursuant to the LSA.

26. KLIM understands that Laura Perryman resigned from Stimwave in November 2019 and, shortly thereafter, filed a certificate of correction with the Delaware Secretary of State purporting to reinstate the Debtor, which stated that the Debtor's certificate of cancellation was filed "due to a clerical error." Around that same time, Ms. Perryman began to claim that the Debtor, and not Stimwave, owned the Assigned IP. These claims directly contradicted representations that Ms. Perryman made to KLIM in connection with its loan diligence, as described herein, and were never previously disclosed by Ms. Perryman, or anyone else, to KLIM.

27. Prior to November 2019, KLIM had no knowledge of Ms. Perryman's claims that the Debtor remained in existence beyond the date of the earlier-filed certificate of cancellation or that the Debtor owned the Assigned IP subsequent to the Transfer Agreements.

28. KLIM further understands that relations between Laura Perryman and Stimwave deteriorated considerably following Laura Perryman's departure from Stimwave and subsequent conduct, prompting a series of disputes and legal proceedings among Stimwave, Ms. Perryman, the Debtor, and other individuals and entities affiliated with Stimwave or Ms. Perryman. During the course of those proceedings, Ms. Perryman and the Debtor commenced certain third-party claims against KLIM in the Delaware Action.

29. KLIM maintains fraudulent misrepresentation claims against the Debtor arising, *inter alia*, from the various fraudulent representations and warranties made by Laura Perryman in connection with KLIM's loan to Stimwave, and her related failures to disclose the claims she and the Debtor now make.

30. KLIM maintains general unsecured claims against the Debtor, *see* Claim No. 23-1, as well as secured claims against the Debtor that exceed $20,000,000, *see* Claim No. 22-3. KLIM also has an allowed administrative claim against the Debtor's estate in an amount to be determined by the Court. *See* ECF 163, 174.

31. In the absence of a settlement, in order to protect the interests of its investors, KLIM intends to preserve its rights and pursue all remedies available with respect to its security interest in its collateral under the LSA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 28, 2021.

By: DAVID KHO as MANAGING DIRECTOR

of Kennedy Lewis Investment Management, LLC