UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

IN RE:

MICRON DEVICES, LLC,

    Debtor.
_____/

Case No. 20-23359-LMI

Chapter 11

## DECLARATION OF JEFF GOLDBERG

1. My name is Jeff Goldberg.

2. I am over the age of 18 and am competent to testify.

3. I am the chair of the Audit Committee of the Board of Directors (the "Board") of Stimwave Technologies Inc. ("Stimwave") and have served as director of the Board since April 2018.

4. If I were called to testify as a witness in this matter, I could and would testify to each of the facts set forth herein based upon my review of the Stimwave Records cited herein, my participation on the Stimwave Board, the business records of Micron Devices, LLC ("Debtor") that I have reviewed, or based upon my personal knowledge where applicable.

**A.**     **Founding of Stimwave and Debtor**

5. Stimwave is a medical technology company that markets a minimally invasive nerve stimulator that is implanted in a patient's body to treat chronic pain.

6. Based upon my review of the Debtor's operating agreement, in 2013, Stimwave transferred its intellectual property ("Stimwave IP") to Debtor, and Stimwave's shareholders and Stimwave received essentially 100% of Debtor's ownership units.[1] In connection with these

---

[1] Stimwave's existing shareholders were given Class A units in the Debtor equal to their *pro rata* ownership interests in Stimwave. Class B units of Debtor were given to the Debtor's founder Laura Perryman and two-non-Stimwave-shareholder employees purportedly in exchange for their transfer of certain property. Class C units of

57952647;1

transfers, Stimwave retained for itself rights, via a license back from the Debtor, to practice Stimwave IP in the field of spinal cord stimulation to treat pain.[2]

B.   **Series D Investment and StimQ Contribution from Debtor to Stimwave**

7.   Based on information provided to me by Laura Perryman in my capacity as a Director of Stimwave, as well as my review of the minutes of a Stimwave board meeting held on February 22, 2018[3], I understand, based on those same sources, that in early 2018, Stimwave raised funding via an issuance of Series D Preferred Shares.  I further understand that, at that time, the lead series D investor raised concerns regarding the fact that Stimwave did not own majority control of its subsidiary, StimQ Medical LLC ("StimQ"), which held a license to pursue medical treatments involving peripheral nerve stimulation, and indicated that this ownership structure would negatively affect Stimwave's valuation, resulting in a materially lower price per share of series D stock.  The minutes of the February 22, 2018 Stimwave board meeting reflect that, after reporting the above information to the board, Laura Perryman proposed to transfer a majority interest in StimQ from the Debtor (plus some additional shares Ms. Perryman owned personally through LTP Ltd. LLC) to Stimwave.

8.   Shortly following these discussions, Laura Perryman caused the Debtor to contribute its ownership in StimQ (the "StimQ Equity") to Stimwave pursuant to a Contribution

---

Debtor were given to Stimwave.  Class A units comprised 82% of the Debtor.  Class B units comprised approximately 13% of debtor.  Class C units comprised approximately 5% of the Debtor.

[2] A true and correct copy of the License Agreement is attached to the Movant's Joint Exhibit Register as **Exhibit "58."**

[3] A true and correct copy of the Board Minutes is attached to the Movant's Joint Exhibit Register as **Exhibit "15."**  Although the Board Minutes are identified as being a "draft", they are signed by the Company secretary and Stimwave does not have any other minutes from the February 22, 2018 meeting in its records.

Agreement ("StimQ Contribution Agreement") on March 25, 2018.[4] A true and correct copy of the StimQ Contribution Agreement is attached as **Exhibit "3"** to the Movant's Joint Exhibit Register.[5] The StimQ Contribution Agreement states that the Debtor effected the StimQ Contribution "in the interest of improving opportunities for operating and financing opportunities of [Stimwave] and StimQ," which the Debtor determined to be "in the best interests of [its] equity holders," (who at the time owned 100% of Stimwave) and effecting the StimQ Equity contribution in a manner that qualified "under the appropriate provision of the Internal Revenue Code . . . as a tax free capital contribution." Laura Perryman executed the StimQ Contribution Agreement on behalf of both the Debtor (in her capacity as its Manager) and Stimwave (in her capacity as its President and Chief Executive Officer).

9.  Based upon my review of Debtor's business records and Debtor's Schedules, the Debtor continued to operate as a viable going concern following the StimQ Contribution Agreement.

10. The first Series D investment of $5 million was consummated less than one month later, in April 2018 (the "April Series D Transaction"). On April 20, 2018, in a Series D Preferred Stock Purchase Agreement, Laura Perryman represented and warranted to a Series D Investor that Stimwave owned 66.49% of StimQ and that StimQ was a controlled subsidiary of Stimwave, inducing an approximately $5 million equity investment. A true and correct copy of the Series D Purchase Agreement dated April 20, 2018 is attached as **Exhibit "17"** to the Movant's Joint Exhibit Register.

---

[4] Ms. Perryman also contributed her shares of StimQ (held in yet another entity, called LTP Ltd) to Stimwave pursuant to the same Contribution Agreement.

[5] All references to the Movant's Joint Exhibit Register refer to that exhibit register and the exhibits attached thereto, that have been filed with the Court in the above-captioned case with respect to the evidentiary hearing set for April 30, 2021 on *Trustee's Motion for Approval of the Settlement Agreement Entered into by the Subchapter V Chapter 11 Trustee, Kennedy Lewis Investment Management, LLC and Stimwave Technologies Inc.* (ECF No. 234).

11. Stimwave's shareholders (all of whom were owners of Debtor) approved Stimwave entering into the Series D Purchase Agreement. A true and correct copy of the Action by Written Consent of Stockholders is attached as **Exhibit "16"** to the Movant's Joint Exhibit Register. Debtor's unit holders (all of whom were either owners or optionholder/employees of Stimwave) approved amending Debtor's operating agreement to admit the lead Series D investor as a member.

12. After the closing of the April Series D Transaction, a second closing of the Series D Financing involving other investors closed on July 17, 2018. The Series D Preferred Stock Purchase Agreement entered into with such investors reflected Stimwave's 66.74% ownership of the shares of StimQ and that StimQ was a controlled subsidiary of Stimwave, inducing in excess of $20 million in equity investment in Stimwave. A true and correct copy of the Amended and Restated Series D Purchase Agreement dated July 17, 2018 is attached as **Exhibit "18"** to the Movant's Joint Exhibit Register.

C. **The IP Assignments from Debtor to Stimwave**

13. In 2018 in the course of my duties as a board member, I became aware that representatives of Stimwave, including Ms. Perryman, had heard concerns from investors, including potential acquirers, that Stimwave's intellectual-property structure was convoluted because Stimwave, including its StimQ subsidiary, did not own the intellectual property that was critical to Stimwave's business, but rather licensed that intellectual property from the Debtor.

14. In response to these concerns, beginning in October 2018, Ms. Perryman caused Debtor to assign its intellectual property (the "Assigned IP"), including, but not limited to licenses, patents, and certain other contractual rights, to Stimwave (collectively, the "IP Assignments"), as follows:

      a.    The Debtor assigned certain licenses to Stimwave pursuant to the Assignment and Assumption Agreement dated as of October 13, 2018 (the "<u>License Assignment Agreement</u>"). Under the License Assignment Agreement, Stimwave assumed all of the Debtor's duties, liabilities and obligations under the agreements relating to the assigned licenses and agreed "to pay, perform, and discharge, as and when due," all of the Debtor's obligations under such agreements accruing on and after the date of the License Assignment Agreement. The License Assignment Agreement was executed on behalf of the Debtor by Mark Coleman, a director, and on behalf of Stimwave by Ms. Perryman (as Chief Executive Officer). A true and correct copy of the License Assignment Agreement is attached as **Exhibit "4"** to the Movant's Joint Exhibit Register.

      b.    The Debtor assigned certain patents and inventions to Stimwave pursuant to the Patent Assignment, dated as of November 6, 2018 (the "<u>Patent Assignment Agreement</u>"). The Debtor acknowledged in the Patent Assignment Agreement that it received "good and valuable consideration." The Patent Assignment Agreement was executed by Ms. Perryman on behalf of both the Debtor (as Manager) and Stimwave (as Chief Executive Officer). A true and correct copy of the Patent Assignment Agreement is attached as **Exhibit "5"** to the Movant's Joint Exhibit Register.

      c.    The Debtor assigned to Stimwave all of its rights under a contract with Epimed International, Inc. (the "<u>Epimed Contract</u>") pursuant to the Epimed Assignment Agreement dated as of January 23, 2019 (the "<u>Epimed Assignment Agreement</u>"). Pursuant to the Epimed Assignment Agreement, Stimwave assumed all of the Debtor's "duties, liabilities, and obligations" under the Epimed Contract and agreed "to pay,

perform, and discharge, as and when due," all of the Debtor's obligations under the Epimed Contract accruing on and after the date of the Epimed Assignment Agreement. The Epimed Assignment Agreement was executed on behalf of the Debtor by Mark Coleman in his capacity a director and on behalf of Stimwave by Ms. Perryman in her capacity as Chief Executive Officer. A true and correct copy of the Epimed Assignment Agreement is attached as **Exhibit "6"** to the Movant's Joint Exhibit Register.

15. The StimQ Contribution Agreement, the License Assignment Agreement, the Patent Assignment Agreement, and the Epimed Assignment Agreement are referred to as the "Transfer Agreements."

16. The Debtor's Board authorized the IP Assignments pursuant to a unanimous written consent of the Debtor's Board (the "IP Assignment Board Approval"). The IP Assignment Board Approval recited the Debtor's Board's justification, including that "the members of the Company are also Stockholders in Stimwave" and "the Stimwave IP Assignment would improve the value and business prospects for Stimwave and better enable each of the respective companies to operate more efficiently." A copy of the IP Assignment Board Approval that I reviewed is attached as **Exhibit "7"** to the Movant's Joint Exhibit Register.

17. Based upon my review of Debtor's 2018 K-1 statements and Debtor's operating agreement, as of the time of the IP Assignments, a majority of Debtor's outstanding voting units were collectively held by people who knew about or approved the IP Assignments, including: (i) Laura Perryman, (ii) Robert Anderson and Marc Coleman (two individuals who served as directors of both Stimwave and Debtor), (iii) Echo Vibration Limited a/k/a Orchid (whose designee on the Stimwave Board participated in the approval of such transactions), (iv) Elizabeth Greene (a former Stimwave officer who served as Secretary at the Stimwave Board meeting at

which the License Assignment Agreement and the Patent Assignment Agreement were approved), (v) Patrick Larson (a former Stimwave employee), and (vi) Marc Loev (an owner of both Stimwave and Debtor). The calculation of these units is as follows:

    a. Laura Perryman – 33.77%

    b. Echo Vibration Limited – 6.15%

    c. Robert Anderson – 3.22%

    d. Mark Coleman – 0.33%

    e. Elizabeth Greene – 0.33%

    f. Patrick Larson – 5.84%

    g. Marc Loev – 0.85%

    h. Percentage of Debtor's owners who approved/had knowledge: 50.49%

**D.**  **Overlapping Ownership and Stockholders' Awareness of Transfer Agreements**

18. Exhibit 9 to the Movant's Joint Exhibit Register identifies the universe of Debtor's unitholders that were also owners of Stimwave in 2018 and 2019 based upon Stimwave's books and records.

19. Based upon my review of Stimwave's business records and Exhibits 8, 9, 17, and 18 attached to the Movant's Joint Exhibit Register, in March, 2018, when the Debtor transferred the StimQ Equity to Stimwave through the Contribution Agreement, a substantial majority of Debtor's owners owned Stimwave shares. By the end of 2018 and early 2019, which is when the Debtor entered into the IP Assignments, a substantial majority of the owners of the Debtor still owned outstanding shares in Stimwave.

20. A substantial majority of Debtor's members, both in their capacity as Debtor's members and Stimwave stockholders, were directly made aware of the StimQ Contribution

7

Agreement by their awareness and authorization of the Series D Purchase Agreement on behalf of Stimwave and sale of Debtor's units to the Series D lead investor on behalf of the Debtor. As noted above, the Series D Purchase Agreement included representations and warranties reflecting the StimQ Contribution Agreement and Stimwave's stockholders (which, as noted above, were almost all Debtor's shareholders) approved the Series D Purchase Agreement and related matters by written consent.

21. Pursuant to my review of the Debtor's amendment no. 1 to its operating agreement attached as **Exhibit "25"** to the Movant's Joint Exhibit Register, the holders of a majority of Debtor's outstanding units also approved matters related to the admission of Orchid as a member of Debtor.

22. As the Transfer Agreements make clear, neither the contribution of the StimQ Equity nor the separate and distinct transfer of the Assigned IP was a sale of assets, but rather each was an intercompany transfer/consolidation transaction to benefit the entities' ultimate owners.

E. <u>Perryman's Representations and Warranties of StimQ and IP Ownership</u>

23. Subsequent to the execution of the Transfer Agreements, Stimwave raised additional capital through various equity and debt financings. In total, Stimwave raised approximately $60 million, in each case representing that the StimQ Equity was owned by Stimwave and, beginning in late 2018, that the transfers of StimQ Equity and Assigned IP had been consummated via the StimQ Contribution Agreement, the License Assignment Agreement, the Patent Assignment Agreement, and the Epimed Assignment Agreement.

24. Ms. Perryman presented to Stimwave's board and publicly on Stimwave's achievements and business structure, including representations that Stimwave owned the StimQ Equity and the Assigned IP.

25. On May 13, 2019, Stimwave entered into a Loan and Security Agreement ("LSA") with Kennedy Lewis Investment Management LLC ("KLIM") under which KLIM received a first-priority lien on the Assigned IP. KLIM negotiated and executed the LSA and advanced funds pursuant to the LSA, which included representations and warranties by Laura Perryman (as CEO of Stimwave and Managing Member of the Debtor) that Stimwave owned the Assigned IP and StimQ Equity at the time the LSA was executed.

26. The LSA was negotiated over a period of weeks and involved various drafts, and was negotiated at arm's length between Stimwave and KLIM.

F. **Laura Perryman's Corporate Revival of Debtor**

27. In the fall of 2019, the Stimwave board learned of serious allegations of misconduct related to Laura Perryman. Ms. Perryman was placed on administrative leave and resigned as Stimwave's CEO hours before the commencement of a Stimwave board meeting called to consider her employment.

28. On November 25, 2019, Laura Perryman filed a Certificate of Correction of the Certificate of Cancellation for the Debtor, purporting to revive Debtor as an entity, and executed an assignment purporting to assign the patents from the Debtor to Micron Medical LLC, a separate entity Ms. Perryman controls. A copy of the Certificate of Correction is attached as **Exhibit "22"** to the Movant's Joint Exhibit Register.

### G. Prepetition Litigation, Bankruptcy Case and Adversary Proceedings

29. Beginning in December 2019, Stimwave sued the Debtor and its former Managing Member, Laura Perryman, who signed and executed the Transfer Agreements related to, among other things, the effectiveness of the Transfer Agreements, the ownership and use of the Assigned IP and the StimQ Equity, and the inclusion of those assets as KLIM's loan collateral (the "Prepetition Litigation").

30. The Prepetition Litigation includes an action by Stimwave against the Debtor, Perryman, and others, commenced in Delaware Chancery Court in December 2019 (the "Delaware Action"). *See Stimwave Tech., Inc. v. Micron Devices, LLC*, No. 2019-1003-SG (Del. Ch. 2019). A true and correct copy of Stimwave's operative pleading in the Delaware Action authorized by the Board is attached to the Movant's Joint Exhibit Register as **Exhibit "26."** The Debtor and Perryman filed counterclaims and third-party claims in the Delaware Action, including third-party claims against KLIM. Prior to the filing of Debtor's bankruptcy on December 7, 2020 ("Petition Date"), in the Delaware Action, KLIM and Stimwave had each fully briefed and argued motions to dismiss the Debtor's counterclaims and third-party claims, and Stimwave's claims against the Debtor had been set for trial in January 2021. In November 2020, the Delaware Chancery Court sanctioned Ms. Perryman and the Debtor for violating discovery and purposefully acting to delay the "day of reckoning" in the Delaware Action.

31. The Prepetition Litigation and the property that is the subject matter thereof have been at the center of the Debtor's bankruptcy. At the Court's direction [ECF No. 87], between January 27, 2021 and February 28, 2021, the Debtor, Stimwave, KLIM and Perryman participated in a Judicial Settlement Conference presided over by the Honorable Judge Mindy A. Mora. The Subchapter V Trustee Tarek Kiem ("Trustee") attended and participated in the

Judicial Settlement Conference. The Judicial Settlement Conference was unsuccessful, and on March 1, 2021, Judge Mora filed a final report with the Bankruptcy Court stating that the parties to the Judicial Settlement Conference had reached an impasse.

32. On February 2, 2021, while the Judicial Settlement Conference was ongoing, the Debtor commenced two adversary proceedings against Stimwave (the "Adversary Proceedings" and collectively with the Prepetition Litigation, the "Litigation Matters"). In Case Number 21-01033-LMI (the "Turnover Action"), the Debtor seeks, *inter alia*, turnover of funds that it claims Stimwave owes the Debtor. In Case Number 21-01034-LMI (the "Declaratory Judgment Action"), the Debtor seeks, *inter alia*, a declaratory judgment that the StimQ Contribution Agreement, License Assignment Agreement, and the Patent Assignment Agreement were null and void *ab initio* and related monetary relief.[6]

33. In addition to the aforementioned claims, Stimwave maintains various contractual claims, claims arising from discovery sanctions, and accruing claims related to Debtor's operations that infringe upon Stimwave's intellectual property rights and other contractual rights.

34. The resolution of the dispute regarding the Transfer Agreements is critical to Stimwave's going concern value, and every post-judgment remedy and appeal available will be exhausted by Stimwave to preserve Stimwave's rights pursuant to the Transfer Agreements.

35. The Settlement Agreement, attached as **Exhibit "2"** to the Movant's Joint Exhibit Register, and the Settlement Term Sheet attached as **Exhibit "1"** to the Movant's Joint Exhibit Register and attached as Exhibit A to the *Trustee's Motion For Approval Of The Settlement Agreement Entered Into By The Subchapter V Chapter 11 Trustee, Kennedy Lewis Investment*

---

[6] The Declaratory Judgment Action did not seek a declaratory judgment as to the Epimed Assignment Agreement. However, the validity of the Epimed Assignment Agreement was a subject of the declaratory judgment sought by Stimwave, and contested by Debtor, in Delaware Action.

11

57952647;1

*Management, LLC And Stimwave Technologies, Inc.* (ECF No. 234) were negotiated at arm's length over the period of a month, between Stimwave, KLIM, the Trustee and his professionals.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 28, 2021.

                               */s/ Jeff Goldberg*
                               By: Jeff Goldberg
                               As Chair of the Audit Committee of Stimwave Technologies, Inc.